IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DAVID MITCHELL KNIBBS, | ) | Civil No.: 6:11-cv-06208-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

David Mitchell Knibbs
1860 18th Court
Florence, OR 97439

    Plaintiff *Pro Se*

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Terrye Erin Shea
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

   Attorneys for Defendant

JELDERKS, Magistrate Judge:

   Pro se plaintiff David Knibbs brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Child Disability Benefits (CDB) and Supplemental Security Income benefits (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

   For the reasons set out below, the Commissioner's decision should be affirmed.


**Procedural Background**

   Plaintiff filed an application for SSI on January 28, 2008, and filed an application for CDB on February 8, 2008. Both applications alleged that Plaintiff had been disabled since January 1, 1997.

   After his applications had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

   On October 26, 2009, a hearing was held before Administrative Law Judge (ALJ) David Engel. Plaintiff and Frances Summers, a Vocational Expert (VE), testified at the hearing.

   In a decision filed on March 11, 2010, ALJ Engel found that Plaintiff was not disabled within the meaning of the Act. On June 29, 2010, the Appeals Council granted Plaintiff's

FINDINGS AND RECOMMENDATION - 2

request for review of that decision, and remanded Plaintiff's claims to the Agency for further proceedings.

On December 14, 2010, a hearing was held before ALJ John Madden, Jr. Plaintiff and Dara Knibbs, Plaintiff's mother, testified at the hearing.[1] In a decision filed on January 7, 2011, ALJ Madden, Jr. found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on February 14, 2011, when the Appeals Council denied Plaintiff's request for review. Plaintiff challenges that decision in the present action.

## Background

Plaintiff was born on April 24, 1987. He was 9 years old at the time of his alleged onset of disability, was 20 years old when he filed his applications for benefits, and was 23 years old when ALJ Madden, Jr. filed the decision at issue here. He graduated from high school, attended a Community College for one semester, and worked very briefly as an inventory clerk and traffic flagger.[2]

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

---

[1] A Vocational Expert attended the hearing but did not testify.

[2] Plaintiff's earnings were insufficient to constitute substantial gainful activity.

FINDINGS AND RECOMMENDATION - 3

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520©.

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment

is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.

20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform

relevant work he or she has done in the past.  A claimant who can perform past relevant work is

not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that

the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this

burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

  At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  <u>Id.</u>

### **Medical Record**

  The relevant medical evidence is addressed in the discussion of the parties' contentions

below.

### **Testimony**

#### **Plaintiff**

  Plaintiff testified as follows at the hearing before ALJ Madden, Jr.

  Plaintiff could not work because stress from work caused depression.  He could not

perform the sort of work performed by auto detailers because "muscle overflow" related to his

Asperger's syndrome caused fatigue.  Plaintiff had quit after working two weeks for a company

that performed inventory service because of fatigue and stress.  He had quit working as a flagger

after a short time because the position was too physically demanding and he moved so he could

continue living with his mother.  Both of those positions had been physically and mentally fatiguing.

Plaintiff was fatigued by doing activities around the house as well.  Plaintiff could not recall working since he quit the flagging job, but occasionally repaired computers at a community center on a volunteer basis.

Plaintiff had no income and continued to live with his mother at the time of the hearing.

**Lay Witness Testimony**

Dara Knibbs, Plaintiff's mother, testified as follows at the hearing before ALJ Madden, Jr.

Plaintiff had issues with "authority figures" and did not like to talk to anyone other than his parents.[3]  He had quit the jobs he worked at briefly because he was "rule-oriented" and rules had not been followed at these jobs, the work caused problems with his allergies, required too much contact with other people, and was "just too tiring for him."  Social situations made Plaintiff anxious, and he tried to avoid contact with others.

Plaintiff spent much of his time "on the computer and on the internet."  He played computer games and played with his dog.  Plaintiff did some household chores, but needed to be asked to do them a few days in advance.  He helped, but it had "to be when he's ready." Because of his muscle overflow, chores such as cleaning the bathroom were very difficult for him.  Plaintiff had acquired significant computer skills working with computers on his own, and he often spent much of the day on the internet.  He was not lazy, but needed time to "build up" to doing chores.

---

[3]Though Ms. Knibbs initially referred to Plaintiff's father in the present tense, she later clarified that he had died a few years earlier.

FINDINGS AND RECOMMENDATION - 6

Though Plaintiff might be able to work for a few days, he could not continue because he was exhausted by stress and muscle overflow. When confronted with significant tasks, Plaintiff felt overwhelmed and retreated to his room and hid. Muscle overflow caused Plaintiff's muscles to tighten too much and resulted in fatigue and loss of coordination. This made physical tasks difficult for him. Plaintiff could operate a computer keyboard, but writing was very difficult for him and he sometimes broke pens and pencils. Plaintiff lacked fine motor skills, and sometimes needed help with tasks such as putting nuts and bolts together. He was not lazy.

Plaintiff had only two friends. He avoided eye contact and would not approach people. He corresponded by email with a few people with whom he had done online beta testing of a video game. Plaintiff had difficulty remembering and following oral instructions. He needed to have instructions provided in writing, but then would often find them overwhelming. He was able to drive, but was often uncertain concerning directions, even to places he had been a number of times. When Plaintiff became focused on something he was not easily distracted. However, if his attention was distracted it was difficult for him to refocus.

The Childhood Development Research Center at Oregon Health and Sciences University (OHSU) had diagnosed Plaintiff with Executive Function Disorder, Visual Processing Disorder, Math Calculation Disorder, Socialization Disorder, Muscle Overflow, and Test Anxiety. Plaintiff was not diagnosed with Auditory Processing Disorder at OHSU. However, that impairment was diagnosed when Plaintiff was retested at a speech and hearing clinic in Eugene, Oregon.

Plaintiff's mother had thought that Plaintiff could be trained to work as a pilot because he would be largely isolated from others in that position, and Plaintiff had taken 12 hours of flight instruction. However, an assigned "vocational rehab" employee "did not know what the pilot

did," thought that work as a pilot would require too much social contact, and opined that Plaintiff should instead work at a ticket counter. This had not made sense to the witness, and Plaintiff had become frustrated with efforts to find an appropriate rehabilitation plan.

In a separate statement she submitted to the Agency, Ms. Knibbs reported that Plaintiff's daily activities included watching television, playing video games, and using a computer.

## Vocational Expert

No VE testimony was taken at the hearing before ALJ Madden.

At the earlier hearing before ALJ Engel, a VE testified that Plaintiff had no past relevant work experience. The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and experience who could perform medium, light, and sedentary work subject to the following limitations: The individual could not climb ropes, ladders, or scaffolds; could not work at unprotected heights or around dangerous machinery; and was limited to work that required only simple instructions and only occasional interaction with the public. The VE testified that such an individual could work as an auto detailer, hand packager, agricultural produce sorter, housekeeper, table worker, and semi conductor bonder.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on January 1, 1997.

At the second step, the ALJ found that Plaintiff had the following severe impairments: depression, Asperger's syndrome, and an auditory processing disorder, and allied disorders.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

FINDINGS AND RECOMMENDATION - 8

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that, before he became 22 years old,  Plaintiff retained the capacity to perform medium, light, and sedentary exertional level work, subject to the following limitations: He could not climb ropes, ladders, and scaffolds, and was unable to work in an environment where he would be exposed to unprotected heights and "dangerous moving machinery parts."  Plaintiff was able to understand, remember, and carry out simple to moderately detailed instructions in a work setting, and was able to interact with co-workers and supervisors, with "routine" supervision.  He was limited to occasional interaction with the public.   The ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with this RFC assessment.

At the fourth step of his disability analysis, the ALJ found that Plaintiff had no past relevant work experience.

At the fifth step of his analysis, the ALJ found that, before he reached 22 years of age and before he filed his applications for benefits, Plaintiff had the functional capacity needed to perform a number of jobs that existed in substantial numbers in the national economy.  As examples of such work, the ALJ cited positions as an auto detailer, hand packager, agricultural produce sorter, housekeeper, table worker, and semi conductor bonder.  Based upon this finding, he concluded that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala,
66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears
the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),
and bears the burden of establishing that a claimant can perform "other work" at Step Five of the
disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal
standards and the findings are supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).
"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such
relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or
detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.
1986). The Commissioner's decision must be upheld, however, even if "the evidence is
susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff asserts that the ALJ committed the following 11 errors. In order to permit an
efficient analysis, these arguments are referred to by number and are grouped into several
categories in the discussion below.

## Plaintiff's Contentions

### 1. ALJ's Assessment of Plaintiff's Fine Motor Skills

FINDINGS AND RECOMMENDATION - 10

Plaintiff contends that the ALJ erred in finding that his ability to operate a computer keyboard was evidence of fine motor skills, and in citing his extensive use of computers as evidence that he was less impaired than he alleged.  He argues that the ALJ failed to recognize that he used a computer keyboard to reduce pain and impairment arising from his muscle overflow and as an accommodation for limitations in fine motor skills that made it difficult for him to write.

2. **ALJ's Credibility Determination**

Plaintiff contends that the ALJ failed to adequately support the conclusion that his description of his pain was not wholly credible.

3. **Evaluation of Testimony of Plaintiff and Plaintiff's Mother**

Plaintiff contends that the ALJ erred in finding that his testimony was inconsistent with that of his mother, and failed to adequately appreciate that testifying could have been difficult and stressful for him.

4. **Discounting Severity of Plaintiff's Symptoms**

Plaintiff contends that the ALJ erred in rejecting his testimony based upon absence of objective evidence of the severity of impairment Plaintiff alleged.

5. **Evaluation of the Severity of Plaintiff's Headaches**

Plaintiff contends that the ALJ failed to adequately address his testimony concerning the severity of his headaches/migraines.

6. **ALJ's Evaluation of Plaintiff's Central Auditory Processing Disorder**

Plaintiff contends that the ALJ erred in relying on an examination that did not result in diagnosis of an auditory processing disorder.

7. **ALJ's Evaluation of Medical Records from OHSU and Eugene Hearing and Speech Center**

Plaintiff contends that the ALJ failed to properly resolve conflicts between medical records from the OHSU CDRC and the Eugene Hearing and Speech Center.

8. **Relationship Between Plaintiff's Medical Impairments and Symptoms**

Plaintiff contends that the ALJ erred in attributing his functional limitations to factors other than those cited by medical experts.

9. **ALJ's Evaluation of Cause of Plaintiff's Withdrawal**

Plaintiff argues that the ALJ erred in concluding that he simply "does what he wants to do and doesn't do what he doesn't want to do."

10. **ALJ's Resolution of Conflicts of Evidence Concerning Plaintiff's Ability to Maintain Attendance**

Plaintiff contends that the ALJ erred in concluding that he could maintain attendance in spite of substantial evidence that his ability to do so was severely limited.

11. **ALJ's Evaluation of the Combined Effects of his Impairments and Limitations**

Plaintiff argues that the ALJ failed to properly evaluate and discuss the combined effects of his limitations and symptoms on his ability to carry out work-related functions.

**Organization of Discussion**

The Commissioner notes that Plaintiff essentially contends that the ALJ erred in three ways: 1) failing to properly assess his impairments; 2) failing to properly evaluate the credibility of Plaintiff and his mother; and 3) failing to properly consider and address relevant evidence in

the medical record in assessing his RFC. Plaintiff's arguments are addressed in the context of these categories below.

I. **ALJ's Assessment of Plaintiff's Impairments**

Arguments 1, 6, 7, 8, 10, and 11challenge the ALJ's assessment of the severity of and functional limitations properly attributable to Plaintiff's impairments. These arguments assert that the ALJ erred in concluding that Plaintiff's use of computers demonstrated fine motor skills; relying on a report that he did not have a central auditory processing disorder; failing to resolve conflicts concerning evaluations at two clinics; determining the cause of his limitations; concluding he could maintain attendance; and evaluating the combined effects of his severe and non-severe impairments.

In assessing a claimant's residual functional capacity, an ALJ must determine the most a claimant can do, given his symptoms and limitations. Social Security Ruling (SSR) 96-8p. No doctor's opinion or testimony is conclusive as to this determination, and the ALJ must consider the record as a whole and explain the weight given to medical evidence and testimony. SSR 96-5p. The determination must be based upon the record as a whole, id., and will be upheld by a reviewing court if the ALJ's decision is based upon correct legal standards and supported by substantial evidence. E.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, though he found that Plaintiff had several severe impairments, the ALJ found that he retained the capacity to perform medium, light, and sedentary exertional level work, subject to the following limitations: He could not climb ropes, ladders, and scaffolds; and was unable to work in an environment where he would be exposed to unprotected heights and "dangerous moving machinery parts." Plaintiff was able to understand, remember, and carry out simple to moderately detailed instructions in a work setting, and was able to interact with co-workers and

supervisors, with "routine" supervision.  He was limited to occasional interaction with the

public.  The ALJ asserted that, as was required by  Social Security Rulings and regulations he

cited, he had considered all of Plaintiff's alleged symptoms to the extent they could reasonably

be accepted and  were consistent with the evidence, including medical opinions and other

objective medical evidence.  A careful review of the ALJ's decision and relevant portions of the

record fully supports the ALJ's assertion, and does not support Plaintiff's arguments to the

contrary.  In evaluating Plaintiff's RFC, the ALJ applied the correct legal standards, and his

conclusions are fully supported by substantial evidence in the record.

As to  Plaintiff's specific arguments concerning the ALJ's assessment of his impairments

addressed in this section, I note that the ALJ's conclusion that Plaintiff's work with computers

showed that he possessed fine motor skills is supported by the record.  Though Plaintiff contends

that keyboards can be used to accommodate motor impairments, the ALJ cited not only

Plaintiff's extensive daily use of computer keyboards, but evidence that Plaintiff repaired

computers as well.  The ALJ's conclusion that Plaintiff's use of computers demonstrated fine

motor skills is supported by substantial evidence.  The ALJ cited the results of objective medical

testing at the OHSU Child Development and Rehabilitation Center supporting his conclusion

that, though Plaintiff's auditory processing disorder was a severe impairment, it did not result in

functional limitations that were disabling.  Though another clinic had diagnosed that disorder

when Plaintiff was 9 years old, the ALJ's reliance on later testing at another facility when

Plaintiff was 13 years old was reasonable, and was consistent with his responsibility for

resolving conflicts and ambiguities in the medical evidence.  See, e.g., Andrews v. Shalala, 53

F.3d 1035, 1039-40 (9th Cir. 1995) (ALJ responsible for resolving ambiguities and conflicts in

the medical evidence); Richardson v. Perales, 402 U.S. 389, 401(1971) (ALJ's decision must be

upheld if supported by evidence reasonable mind might accept as adequate to support

conclusion).  The ALJ cited substantial evidence supporting his assessment of the causes of

Plaintiff's functional limitations and the extent to which they affected his ability to perform work

related functions.  He also cited substantial evidence supporting the conclusion that Plaintiff

could reasonably be expected to maintain attendance and focus, and his thorough review of the

medical record fully supported his conclusion that the combined effects of Plaintiff's symptoms

and impairments did not preclude performance of the jobs he cited at the fifth step of his

disability analysis.

## II. **ALJ's Credibility Assessments**

Plaintiff's issues 2, 3, 4, 5, and 9 challenge the ALJ's conclusion that Plaintiff's

statements concerning the severity of his symptoms and limitations were not wholly credible.

These arguments assert that the ALJ failed to adequately support his assessment of Plaintiff's

testimony concerning pain, erred in finding that Plaintiff's testimony was inconsistent with that

of his mother, failed to adequately appreciate that testifying could have been difficult and

stressful for Plaintiff, erred in rejecting Plaintiff's testimony on the grounds that it was not

supported by objective evidence of the severity of impairment Plaintiff alleged, failed to

adequately address Plaintiff's testimony concerning the severity of his headaches/migraines, and

erred in concluding that he simply did what he wanted to do.

### A. **Plaintiff's Credibility**

### **Standards for Evaluating Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If

a claimant produces medical evidence of an underlying impairment that is reasonably expected

to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.   An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**Analysis**

Because plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff was not wholly credible.

The ALJ met that requirement in his thorough review of Plaintiff's testimony and the record.  The ALJ observed that Plaintiff's activities either were not as limited as Plaintiff asserted, or, given the relatively weak medical evidence and other factors he discussed,  were attributable to factors other than Plaintiff's objectively verifiable medical impairments.  He correctly noted that, though Plaintiff alleged that his impairments were disabling, he testified he had completed a semester of college level study, was able to drive and take public transportation, interacted with others at church, was able to take care of his personal needs, performed household chores, played video games, and used a computer connected to the internet.  The ALJ noted that Plaintiff had stated that he spent hours on a computer every day and sometimes repaired computers as a volunteer at a community center.

In support of his credibility determination, the ALJ also correctly observed that treatment notes did not support Plaintiff's allegations of disabling pain, and that the medical record included no evidence of exertional limitations.  He correctly noted that, though Plaintiff had been diagnosed with an auditory processing disorder, later testing did not confirm functional limitations attributable to that disorder.  The ALJ reasonably concluded that Plaintiff's allegations concerning the severity of his limitations were inconsistent with the evidence in the record as a whole.

Where, as here, a claimant produces objective medical evidence of an impairment that can produce symptoms, an ALJ may not reject testimony as to the severity of the symptoms solely on the grounds that it is not fully corroborated by medical evidence.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Nevertheless, "medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects," id., and a claimant's

subjective complaints are credited only to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record."[4]   SSR 96-7p.

In concluding that Plaintiff's description of his symptoms and impairments was not wholly credible, the ALJ did not rely solely on the absence of objective medical evidence supporting Plaintiff's allegations.  Instead, he also cited other substantial evidence in the record, including reports of Plaintiff's activities, supporting his credibility determination,   The ALJ provided clear and convincing reasons for concluding that Plaintiff was not wholly credible, and his credibility determination should not be set aside here.

B. **Credibility of Plaintiff's Mother**

An ALJ must provide reasons that are "germane" for rejecting lay witness testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

The ALJ summarized the hearing testimony and written statements of Dara Knibbs, Plaintiff's  mother, which appeared in the record.  He noted that, though her description of Plaintiff's activities and limitations was similar to Plaintiff's in many ways, there were several inconsistencies between the testimony of the two.  He also cited internal inconsistencies in the statements and testimony of Plaintiff's mother, and concluded that she was not wholly credible.

The ALJ provided several reasons for finding that Ms. Knibbs was not entirely credible. The first two of these–that Ms. Knibbs lacked medical expertise and was naturally biased because of her relationship to Plaintiff, are not sufficient to support an adverse credibility finding.  However, other reasons he provided are.  Most significantly, the ALJ correctly noted that Ms. Knibbs's statements, like those of her son, were simply not consistent with the objective

---

[4]Though most decisions address this issue in the context of "excess pain," this rule applies equally to other symptoms as well.  Swenson v. Sullivan, 876 F.2d 687-688 (9th Cir. 1995).

record.  This reason was germane, and was a sufficient basis for discounting Ms. Knibbs's

testimony.  See Bayliss, 427 F.3d at 1218 (inconsistency with medical record adequate basis for

rejecting lay witness testimony).  In addition, he noted inconsistencies in Ms. Knibbs's testimony

that were germane to his credibility determination.  These included the inconsistencies between

her assertions that Plaintiff lacked fine motor skills, but was able to operate a keyboard for many

hours a day and repaired computers at a community center, and between her testimony that

Plaintiff could not sustain work related activities, but was able to maintain focus without

distraction and work for long periods on a computer.

The ALJ also found that Ms. Knibbs was not wholly credible because she was strongly

motivated by secondary gain.  He noted that she had written a letter asserting that Plaintiff had

experienced financial difficulties because the Agency had denied his claims, and demanded that

the Agency pay to recover a house Plaintiff had been forced to sell at a loss, pay debts Plaintiff

had incurred to attend college, and pay "for his education as a pilot at a school of his choice."

These statements are relevant in assessing credibility.  See  Tidwell v. Commissioner, 161 F.3d

599, 602 (9th Cir. 1998)(witness's credibility diminished if efforts to obtain disability benefits

motivated more by financial stress than by disabling impairments).

The ALJ here provided germane reasons for concluding that Ms. Knibbs was not wholly

credible.  The most significant of these is the inconsistency between Ms. Knibbs's testimony and

the medical record, which simply does not indicate the level of impairment to which she

testified.  III. **ALJ's Assessment of Medical Evidence**

The final category of Plaintiff's arguments concerns the ALJ's assessment of the

significance of Plaintiff's auditory processing disorder.  In his sixth and seventh arguments,

Plaintiff contends that the ALJ erred in relying on a report indicating that he did not have a

central auditory processing disorder and failed to properly resolve conflicts between medical

records from the OHSU CDRC and the Eugene Hearing and Speech Center. Plaintiff contends

that, though the ALJ included an auditory processing disorder in the list of his severe

impairments, he did not recognize the degree to which that disorder limited his functional

capacity.

The administrative record includes reports of testing performed at the Eugene Hearing

and Speech Center when Plaintiff was 9 years old and testing performed at the OHSU CDRC

when Plaintiff was 13 years old. The first of these tests resulted in a diagnosis of auditory

processing disorder; the second did not. In the text of his opening memorandum, Plaintiff has

included a second report from the Eugene Hearing and Speech Center, dated February 16, 2001,

which was also performed when Plaintiff was 13 years old. This report noted that Plaintiff's

condition had improved since he was previously tested at that center, and again included an

auditory processing disorder diagnosis.

Plaintiff acknowledges that the latter report from the Eugene Hearing and Speech Center

does not appear in the administrative record, but contends that it was submitted several times,

and that the ALJ must have seen it. A careful examination of the administrative record does not

support this assertion. The copy inserted in Plaintiff's memorandum is addressed to a physician,

is stamped as having been received by an otherwise unidentified "Special Services," and

indicates that copies were sent to the Springfield School District.[5]

The Commissioner contends that Plaintiff has not established that the second report from

the Eugene Speech and Hearing Center should be considered. I agree. A court may remand a

matter to the Agency for consideration of new evidence if it is material and good cause exists for

---

[5]The Commissioner asserts that the Agency does not have a "Special Services" department.

FINDINGS AND RECOMMENDATION - 20

a plaintiff's failure to provide it for inclusion in the record earlier.  See 42 U.S.C. § 405(g).  New evidence is sufficient to require remand only if there is a reasonable possibility that it would have changed the outcome of the determination.  Booz v. Secretary of Health and Human Serv., 734 F.2d 1378, 1380 (9th Cir. 1984).  Here, the second of the reports from the Eugene Speech and Hearing Center does not satisfy these requirements.  Plaintiff has not shown that he provided this report to the Agency earlier and has not shown good cause for failing to do so.  In addition, it does not appear that consideration of the report would have changed the outcome of the ALJ's decision.  Though he noted that testing at OHSU did not result in a diagnosis of auditory processing disorder, the ALJ found that this was one of Plaintiff's severe impairments that needed to be considered in assessing Plaintiff's residual functional capacity.  The ALJ reviewed substantial medical and other evidence supporting his RFC assessment, and there is no basis for concluding that it is reasonably possible that consideration of the second report from the Eugene Speech and Hearing Center would have resulted in a more restrictive RFC or changed the ultimate conclusion that Plaintiff was not disabled.

In considering the reports that do appear in the administrative  record, the ALJ reasonably concluded that the more recent of the two reports in question was more significant.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2000)(reasonable to conclude that later report more significant).  Though he ultimately concluded that Plaintiff was not disabled within the meaning of the Act, the ALJ clearly recognized that  Plaintiff's impairments, including an auditory processing disorder, caused functional limitations, and considered these limitations in assessing Plaintiff's RFC.

In his decision, the ALJ cited substantial evidence in the medical record and the record as a whole supporting his evaluation of Plaintiff's functional capacity.  In addition to other

evidence he cited, the ALJ noted that Dr. David Northway, Ph.D., who had performed a consultative examination, found that, except in school settings, the functional effects of Plaintiff's impairments had been limited.   The ALJ concluded that this opinion was entitled to weight because Dr. Northway was familiar with the Social Security disability program and had reviewed the available medical evidence before forming his opinion as to the severity of Plaintiff's impairments.  He also addressed the opinion of Dorothy Anderson, Ph.D., a non-examining Agency consultant who reviewed the record and completed a psychiatric review technique.  Dr. Anderson opined that Plaintiff had mild limitations in activities of daily living, had moderate difficulties in social functioning and in maintaining concentration, persistence, and pace, had experienced no periods of decompensation, and could perform simple, routine tasks with minimal public contact.  Noting that Dr. Anderson was familiar with the Social Security disability program and had reviewed the available medical evidence, the ALJ reasonably accorded weight to this opinion.

The ALJ here thoroughly reviewed and discussed relevant portions of the record and substantial evidence supports his conclusion that, though Plaintiff's impairments caused some limitations, they were neither as significant as Plaintiff alleged nor were disabling within the meaning of the Act.  The ALJ cited treatment notes and other evidence in the record that fully supported his credibility determinations, his assessment of Plaintiff's residual functional capacity, and his conclusion that Plaintiff was not disabled.  The Commissioner's decision should be affirmed.

## Conclusion

A judgment should be entered AFFIRMING the Commissioner's decision; DISMISSING pending motions, if any, as moot; and DISMISSING this action with prejudice.

## **<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 30, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of December, 2013.


      /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 23